STATE OF NEBRASKA, APPELLEE, v. JOHN KENT HAKE, APPELLANT.

168 N. W. 2d 270

Filed May 9, 1969. No. 37047.

Rollin R. Bailey and Keith A. McIntyre, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

Defendant, John Kent Hake, was sentenced to life imprisonment for second-degree murder for killing his wife.

The only issue involved in this appeal is the severity of the sentence.

Defendant's version of the affair is that he and his wife consumed a large quantity of liquor during the course of the afternoon. Mrs. Hake left the apartment for a short period and upon her return told defendant she was going to leave. She didn't say where. Defendant asked her not to go, but she said they would probably get into an argument and that she was in no mood to argue. She was going someplace where she was appreciated. Defendant then testified: "I didn't know how to keep her there. I wanted her to stay there. I didn't know how to get her to stay there, so I went and got the gun. I thought if she would see me with the gun maybe—maybe she would get scared and stay home. Q. Go ahead. A. —Well, she had went down the stairs and I immediately followed her down the stairs and she had both doors open, the screen door and the inside door and I had the gun in my hands, and she said, 'You won't do anything with that gun. You won't do anything with that damn gun,' she said; and it seemed like at that time that I had never actually done anything that I had said I was going to do; and I just lost my head; and she started running out the door. If she hadn't of ran I don't believe I would have shot her."

Defendant's 15-year-old son testified that while he was eating supper his mother went to a public telephone a block away to make a phone call. While she was gone his dad got the rifle he had given to him, which was sitting in the corner of his bedroom. The gun was unloaded. The clip for it was in a dresser drawer in the bedroom. He heard the drawer opened. When his mother came home, she asked if he wanted to go to a show. He didn't and she said she would go by herself. His dad said: " 'You better not go by yourself to the show.' " His mother then went downstairs followed by his dad. He had the gun. Shortly thereafter he heard three shots. When he went downstairs, his mother was lying

by the doorway. When he arrived on the scene, his dad gave him the gun and told him to shoot him. He took the gun upstairs, unloaded it, and laid it on the bed. Defendant admits getting and loading the gun before his wife returned from her phone call. On cross-examination, defendant stated he thought maybe loading it was an automatic reaction.

A neighbor who occupied the downstairs apartment testified that after he heard the shots, he heard the defendant say: " 'I have killed you, you dirty son of a bitch.' " Later he heard the defendant hollering to his son. On that occasion, he said: " 'David, come get the gun. I just shot your mother. Come get the gun and shoot me.' "

The deceased had two wounds in the left side of the head and neck, one in the head, and one on the neck. One bullet entered the left temple area and later was removed from the skull. The other entered the left posterior neck and exited on the right.

The testimony of the officers would indicate that the defendant was not intoxicated at the time of the shooting. One of them testified that he did not smell any intoxicants. Another detected the odor of intoxicants. Another testified that Hake was upset and crying but that he walked steadily. One of the officers testified as follows relative to what the defendant told him: "Q. And what did he say? A. Said that, 'I shot my wife. I killed my wife. I didn't mean to kill anybody. I' — He said. that she had been playing around for twenty years and he had taken all that he could take. He told her if she went out that he was going to hurt her. He told her—told her that lots of times and she wouldn't believe him. He said that—he told her if she started to leave the apartment he, would shoot her; and that he had shot her; he meant to shoot her."

There is no question but that after the event, as defendant's attorney suggested, defendant felt remorse. It is also true that he voluntarily gave an extensive state-

ment to the police and was cooperative. He had had other felony convictions, but only for bad checks.

The sentence imposed was the maximum set by section 28-402, R. R. S. 1943, which provides for imprisonment of not less than 10 years or during life. The record demonstrates the commission of a serious and violent crime. Under defendant's version of the facts there are some mitigating circumstances. However, we cannot overlook the fact that the trial court had the opportunity to observe the conduct and demeanor of the defendant during the trial and also was aided by the comprehensive presentence investigation provided by section 29-2217, R. R. S. 1943, in this type of case. Further, the evidence would indicate that defendant procured and loaded the gun prior to his wife's return.

We have on many occasions reiterated the rule that where the punishment of an offense created by statute is left to the discretion of the court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to an abuse of such discretion. State v. Blackwell, *ante* p. 121, 165 N. W. 2d 730; State v. Stock, *ante* p. 29, 165 N. W. 2d 111.

We can find no abuse of discretion in the imposition of the sentence herein. Consequently, it may not be disturbed, and the judgment is affirmed.

AFFIRMED.